**Continuation in Support Of An Application For A Search Warrant**

**INTRODUCTION AND AGENT BACKGROUND**

I, Cory J. Howe, being duly sworn, depose and state the following:

1.      I am a citizen of the United States, residing in Michigan.  I am a Special Agent employed by the U.S. Department of Homeland Security, Homeland Security Investigations (HSI).  I have been so employed by HSI and HSI's legacy agency, U.S. Customs Office of Investigations, since October 2001.  I am an Honor Graduate of the Federal Law Enforcement Training Center.  My responsibilities and duties include the investigation and enforcement of laws and regulations including violations related to the importation and exportation of munitions, contraband and prohibited items.  During my employment with HSI, I have participated in numerous investigations, during the course of which I have conducted physical and electronic surveillance, executed search warrants, interviewed and debriefed witnesses, informants and defendants and reviewed evidence.

2.      I make this Continuation in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the further examination and seizure of the property listed in Attachment A, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The applied-for warrant would authorize the forensic examination of the item listed in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

3.      This Continuation is submitted in connection with an investigation into the following violations:  22 U.S.C. § 2778, which make it a crime for any person to export defense articles regulated by the Arms Export Control Act from the United States without a license.  Specifically, subjects of this investigation were allegedly involved in utilizing international shipping containers loaded with automobile parts to conceal and facilitate the smuggling of firearms from the United States to Lebanon;  18 U.S.C. § 1956, which make it a crime for any person to transport, transmit, or transfer, or attempt to transport, transmit, or transfer, monetary instruments or funds from the United States to or through a place outside the United States, or to the United States from or through a place outside the United States, with the intent to promote the carrying on of that specified unlawful activity.

4.      The statements contained in this Continuation are based upon my personal observations, training, and experience; my review of relevant records related to this investigation; and information provided to me by other law enforcement officers involved in this investigation.  Because this Continuation is being submitted for the limited purpose of securing a search warrant, I have not

included each and every fact known to me concerning this investigation.  I have set forth the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities related to alleged violations of 22 U.S.C. § 2778 will be found on the device listed in Attachment A.

## BACKGROUND OF THE INVESTIGATION

5.   Since approximately June 2014, I have been assigned to the investigation of an international firearms smuggling organization controlled in part by an individual named Gilbert Oscar ELIAN (hereinafter "ELIAN"). Members of this suspected criminal organization are living in the United States and residing elsewhere around the world, to include Lebanon.

6.   In June 2014, ATF Grand Rapids received information from a Firearms Multiple Sales Report that Gilbert Oscar Elian had purchased multiple handguns between January 2012 and May 2014.  Elian's known firearm purchases came from local retail outlets.  Elian was not certified as a licensed firearms dealer.

7.   On June 30, 2015, U.S. Customs and Border Protection (CBP) officers in Chesapeake, VA, identified and selected international shipping container # APHU4569814 for an intensive export examination.  The shipper of the container was identified as, Gilbert ELIAN, 4960 Hillside Farms Estate Drive, Grand Rapids, Michigan, and the shipping manifest identified the merchandise inside the container as "used auto parts."  The shipping manifest listed the cargo weight as being 22,000 kilograms.  The value of the merchandise contained inside the container had a value listed as $70,000.  The foreign consignee was identified as, ATTCO SARL, 38 Main Road, Beirut, Lebanon.  The shipment manifest listed the point of origin for the container as being Ohio.

8.   While performing checks on the shipping container, CBP discovered that ELIAN had an active subject database record, which had been created by HSI in Grand Rapids, MI.  CBP Officers in Chesapeake, VA contacted Your Affiant on June 30, 2015.  Based in part on that conversation and the subject database record, the agents determined that a strong possibility existed that ELIAN may be involved in smuggling firearms out of the United States and HSI requested that CBP search the container # APHU4569814.  Shipping Container # APHU4569814 was officially examined in Chesapeake, VA by CBP on July 16, 2015.  CBP officers searched the container pursuant to their designated border search authority.  Upon examination, CBP officers observed the shipping container to contain automobile parts, to include actual vehicles and vehicle engines.  CBP observed unusual bolts in the oil and transmission pans of several of the vehicle engines.  The bolts were at an uneven depth and appeared to be of different sizes.  The bolts also had noticeable tool marks displayed on them.  The oil pans were removed and revealed several disassembled handguns packaged in felt and plastic.  An additional examination of the cargo by CBP yielded another engine and separate transmission which exhibited similar characteristics.  That engine and

transmission were opened and revealed several additional disassembled firearms. CBP officers ultimately searched the entire shipping container and located and seized 20 handguns and 23 firearm magazines.

9.  On July 28, 2015, ELIAN was arrested, as he was attempting to flee the United States, for violations related to smuggling goods from the United States. A search warrant was also executed at ELIAN's Michigan residences on this date.

10. On August 25, 2015, ELIAN was indicted in the Western District of Michigan for violation of one count each of 22 U.S.C. § 2778 – Arms Export Control Act; 18 U.S.C. § 554 – smuggling goods from the United States; and 18 U.S.C. § 371 – Conspiracy.

11. On March 25, 2016, ELIAN pleaded guilty in the United States District Court, Western District of Michigan to one count of conspiring to violate the Arms Export Control Act (AECA) contrary to 18 U.S.C. § 371, 22 U.S.C. § 2778(b)(2), and (c), and 22 C.F.R. parts 121, 127.

12. Between the dates of March 14, 2016 and March 2, 2017, HSI, ATF and IRS Criminal Investigation Division (CID) special agents conducted several proffer interviews with ELIAN. During these interviews, ELIAN identified several individuals who conspired with him to illegally smuggle firearms from the United States to Lebanon. One of those individuals was identified as Abdul Majid SAIDI (aka Majid SAIDI) (hereinafter referred to as SAIDI). ELIAN advised he purchased multiple firearms over the past several years and sold the guns to SAIDI and others, who in turn worked together to smuggle the weapons out of the United States to Lebanon using a Cleveland, OH based warehouse. ELIAN identified the Cleveland, OH based warehouse used by SAIDI and others store and ultimately ship the firearms to Lebanon as being AMS International, 3584 W. 67th Street, Cleveland, Ohio 44102. A database check conducted in November 2017 by Your Affiant through the Ohio Secretary of State online database show AMS International is owned by SAIDI.

13. Following ELIAN's arrest on July 28, 2015, investigators searched two of his cellular telephones and discovered numerous text messages sent between ELIAN and SAIDI. The messages sent to from SAIDI were identified by the following phone numbers: 961-398-9498 (identified fully as being: 19613989498@s.whatsapp.netMajid) and 216-632-3232 (identified fully as being: 1216-632-3232@swhatsapp.netMajid).

14. The messages between ELIAN and SAIDI contained numerous pictures and discussions involving firearms transactions between ELIAN and SAIDI. The conversations specifically described ELIAN selling guns to SAIDI. During one of the text message conversations between ELIAN and SAIDI (using phone # 961-398-9498) dated March 9, 2012, ELIAN sends SAIDI a picture of a Desert Eagle pistol with a carrying case that says, "Desert Eagle Pistols, Magnum

Research, Made in Israel.  SAIDI tells ELIAN in a subsequent message to remove the location of where the pistol was made (Israel) saying, "Man be careful this is made in is.  Remove where it is made."  ELIAN subsequently sends SAIDI a picture of the pistol case with the words 'Made in Israel' removed from the case.  ELIAN later explained to investigators that SAIDI required ELIAN to remove the "Israel" verbiage from the case because the gun was being illegally sent to Lebanon, where animosity exists towards Israel.

15.    On November 20, 2017, HSI Special Agents arrested Majid SAIDI (aka Abdul Majid SAIDI) at the Newark Liberty International Airport as he prepared to board United Airways Flight 960 to Frankfurt, Germany.  SAIDI's final travel destination was identified as being Beirut, Lebanon.  Majid SAIDI was arrested pursuant to a Federal Arrest Warrant issued out of the Western District of Michigan (Court Case # 1:17-MJ-355).

16.    On December 19, 2017, a Federal Grand Jury in the Western District of Michigan returned a True Bill of Indictment for Majid SAIDI and one co-defendant in violation of 22 U.S.C. § 2778 (Arms Export Control Act); 18 U.S.C. § 554 (Smuggling Goods from the United States); 18 U.S.C. § 922 (a)(1)(a) (Dealing Firearms without a License) and 18 U.S.C. § 1956 (Money Laundering).  It was further part of the conspiracy involving Majid SAIDI to secrete and cause to be secreted twenty (20) firearms wrapped in felt and plastic, and inserted inside an automobile engine block in or around June 2015, and place those items in a cargo shipping container addressed to a consignee in Beirut, Lebanon.

17.    At the time of his arrest on November 20, 2017, SAIDI was in physical possession of one active cellular telephone and two laptop computers.  All of the electronic media, described in more detail as being one I-Phone X, one HP Spectre Laptop Computer and one Dell XPS Laptop Computer (described further in "Attachment A" and hereinafter referred to in this Continuation as "THE DEVICE"), were detained by the HSI Newark office on November 20, 2017.  THE DEVICE and the other electronic media were detained by HSI Special Agents in anticipation of a border search – authorized pursuant to the Border Search Exception under Title 19 of the United States Code.  THE DEVICE was shipped from the HSI Newark office to HSI Grand Rapids in November 2017.

18.    On December 1, 2017, HSI Grand Rapids Special Agent Timothy Kruithoff began the forensic examination of THE DEVICE.  Once the forensic image was created, Special Agent Kruithoff copied the image to another hard drive and loaded the forensic image into the forensic programs EnCase and FTK.

19.    Your Affiant presented Special Agent Kruithoff with several keywords and requested those keywords to be searched on the examined media. Upon completion of the forensic examination, Special Agent Kruithoff presented SA Howe with the results, which comprised of keyword hits included but not limited to the words: Pistol, Rifle, Shotgun, Ruger and Glock.

20.     On January 4, 2018, Your Affiant reviewed portions of the forensic extraction report for THE DEVICE which was completed by Special Agent Timothy Kruithoff.  The review of the forensic report revealed several emails sent to the email address lebnani007@hotmail.com from two online gun and gun part marketplaces identified as Grab A Gun and Ebay.  The emails depicted pictures of various guns and gun parts.  E-mails were identified ranging from the dates of October 15, 2014 to July 15, 2015.  The emails sent from Grab A Gun and Ebay identified the recipient linked to the email address lebnani007@hotmail.com as being either "Majid" or "AMSint" (believed to be short for AMS International).

21.     Your Affiant has learned firsthand during the course of this investigation that SAIDI and his co-conspirators have used electronic media in furtherance of the conspiracy alleged in the indictment to communicate by way of text messaging and emails.  Furthermore, Your Affiant knows through training and experience that individuals utilize computers and telephones to communicate with each other about criminal activity of all types.

22.     THE DEVICE described in Attachment A has remained in the custody of HSI since it was originally detained on November 20, 2017.

23.     The warrant applied for would authorize the seizure of electronically stored information and the copying of electronically stored information, all under Rule 41(e)(2)(B). Consistent with the rule, the warrant would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24.     There is probable cause to believe the evidence listed in Attachment B will be stored on the item listed in Attachment A, for the reasons stated above and the reasons listed below:

        a. Based on my training, experience, and research, I know that the items listed in Attachment B have capabilities that allow them to serve as storage for a variety of computer files, including, but not limited to, photographs and videos. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, the type of device used to create the files, and the dates and times the files were created and/or modified.

        b. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed. Electronic files downloaded to a storage medium can be stored for many years at little or no cost. Even when files have been deleted, they can be recovered months or years later

using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the storage medium that is not currently being used by an active file -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d. Wholly apart from user-generated files, computer storage media, in particular, computers' internal hard drives, contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e. When a DVD or CD is played in the optical disc drive of a computer, or when the contents of a "thumb drive" or similar removable media device are accessed, evidence regarding this activity often can be recovered from the computer's media player software, Windows Registry, and/or recent "link" files. Such information is often maintained indefinitely until overwritten by other data.

f. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any item listed on Attachment B because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file

systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to produce, create, transmit, distribute or receive child pornography, or to attempt to do so, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

**Manner of Execution**

27.     Because this warrant seeks only permission to examine a device already in law
        enforcement's possession, the execution of this warrant does not involve the
        physical intrusion onto a premises. Consequently, I submit there is reasonable
        cause for the Court to authorize execution of the warrant at any time in the day or
        night.

**Conclusion**

28.     Based on the aforementioned factual information, I respectfully submit that there
        is probable cause to believe that evidence, fruits, and instrumentalities of
        violations of 22 U.S.C. § 2778 will be found on the device described in
        Attachment A. I therefore, respectfully request that a search warrant be issued
        authorizing the search and seizure of the items listed in Attachment B.